NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3520
_____

MELANIA ISDIATI,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(Agency No. A099-940-363)
Immigration Judge: Rosalind K. Malloy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 4, 2012
Before:  SCIRICA, CHAGARES and GREENBERG, Circuit Judges

(Filed: April 10, 2012)
_____

OPINION OF THE COURT
_____

PER CURIAM.

        Melania Isdiati ("Isdiati") petitions for review of the Board of Immigration

Appeals' final order of removal.  For the reasons that follow, we will deny the petition for

review.

Isdiati, a native and citizen of Indonesia, entered the United States on March 14, 2004 on a visitor's visa, and overstayed. She was served with a Notice to Appear for removal proceedings, which charged that she was removable under Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States for a time longer than permitted. She filed an application for asylum, INA § 208(a), 8 U.S.C. § 1158(a), withholding of removal, INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming persecution by the Indonesian government on the basis of her Catholic religion.

On April 1, 2010, Isdiati appeared with counsel for her merits hearing before the Immigration Judge. She conceded that she was removable as charged, and that her asylum application was not filed within one year of her arrival in the United States. Isdiati testified that she was born in Tulungagung on the island of East Java. Her parents are dead and a sister recently died from an infection, but her remaining sister, Martina, still lives in Tulungagung. Isdiati was baptized in Indonesia and practiced Catholicism there. She testified that every Christmas her church would receive bomb threats from Islamic extremists. Because of these threats she did not attend holiday services. The bomb threats made her feel unsafe attending church, particularly because many of the bombings occurred near her home. In 2002, a bomb exploded at a church in Mojokerto, near Surabaya. Once in Philadelphia, Isdiati joined St. Thomas Aquinas Church, which she attends every Sunday. Isdiati admitted that she was never personally harmed or

injured in Indonesia, and her sister Martina currently practices Catholicism in Indonesia and has never been harmed.

In her affidavit in support of her asylum application, Isdiati noted the bombing of churches in Jakarta, Poso and Pasuran, and the bombings in public places such as the airport and a hotel in Bali. Also in support of her application, Isdiati submitted background evidence in the form of the 2008 and 2009 Country Reports on Human Rights Practices for Indonesia, and the 2009 International Religious Freedom Report on Indonesia.

Following the hearing, the IJ found that Isdiati's asylum application was untimely, and that she failed to satisfy the changed country conditions or extraordinary circumstances tests to excuse her late application. The IJ also determined that Isdiati failed to make an individualized showing of persecution due to her religion. The IJ found Isdiati credible regarding her Catholicism, but the IJ also found that Isdiati had never been harmed in Indonesia, and that her sister Martina has never been harmed. Furthermore, there was nothing in the record to indicate that the government of Indonesia turns a "blind eye" to the damage done to Christian churches. The IJ noted that the government has provided additional security for the churches, and Catholicism is recognized as one of the major religions in the country. In sum, the IJ concluded that there was no *objective* basis for Isdiati's fear, and nothing in the record to indicate that she would be persecuted in the future on account of her religion; thus, she failed to establish that withholding of removal was warranted. In addition, the IJ concluded that

3

there was no evidence to support a CAT claim. The IJ ordered Isdiati removed to Indonesia.

Isdiati appealed to the Board of Immigration Appeals. On August 29, 2011, the Board affirmed the IJ and dismissed the appeal. The Board upheld the IJ's determination that Isdiati was ineligible for asylum due to her untimely application and her failure to show that any exceptions to the timeliness requirement applied to her, see 8 U.S.C. § 1158(a)(2)(B), (D). In addition, the Board agreed with the IJ that Isdiati did not demonstrate eligibility for withholding of removal. In denying her appeal, the Board reasoned that Isdiati had never been injured or harmed, and that her sister, who remains in Indonesia and is a practicing Catholic, has never been harmed. The Board also agreed with the IJ's determination that Isdiati's CAT claim lacked evidentiary support.

Isdiati now seeks review of the Board's decision, through new counsel. We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1), (b)(1).[1] Isdiati has argued in her brief on appeal that a remand is in order because the agency overlooked her "pattern or practice" argument, see generally, Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005), that similar situated Christians are persecuted in Indonesia by forces the government is unwilling or unable to control, see Sukwanputra v. Gonzales,

---

[1] Absent a legal or constitutional argument, the determination that Isdiati delayed too long in applying for asylum, and that she did not show that any of the exceptions to timeliness applied, is unreviewable. 8 U.S.C. § 1158(a)(3); Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003); Jarbough v. Att'y Gen of the U.S., 483 F.3d 184, 189 (3d Cir. 2007). In any event, Isdiati does not challenge the agency's determination that she is ineligible to be considered for asylum because her application was filed late. She has therefore waived judicial review of this issue. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993) (absent extraordinary circumstances, failure to develop arguments in opening briefs results in waiver of those arguments).

434 F.3d 627, 637 (3d Cir. 2006) (remanding where the IJ found that petitioner had not established a well-founder fear of future persecution without specifically addressing whether pattern or practice of persecution existed in Indonesia). Isdiati also disagrees with the agency's determination that she did not demonstrate a clear probability of persecution on the basis of an individualized fear of harm, emphasizing in particular the imminent and menacing nature of the bomb threats.

The Attorney General in his brief counters, in pertinent part, that Isdiati did not raise her pattern or practice claim to the Board and thus she failed to exhaust her administrative remedies. She made no such argument before the IJ, never once uttering the phrase "pattern or practice, " and she did not raise the issue in her Notice of Appeal to the Board. In her brief before the Board, which consisted of five pages, her issue statement was "[w]hether or not the Respondent has suffered past persecution and has a well-founded fear of persecution?" A.R. 10. In her Argument section, she neither identified record evidence, nor presented any legal authority about a pattern or practice of persecution in Indonesia.

We will deny the petition for review. Under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion." Id. The alien must establish by a "clear probability" that her life or freedom would be threatened in the proposed country. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407, 429 (1984). Clear probability is defined to

5

mean that it is more likely than not that an alien would be subject to persecution. See id. at 429-30. It is the applicant's burden to prove her case. 8 C.F.R. § 1208.16(b)(1). To establish a well-founded fear of persecution, an applicant must first demonstrate a subjective fear of persecution through credible testimony that her fear is genuine. Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003). The alien must show, objectively, that "a reasonable person in the alien's circumstances would fear persecution if returned to the country in question." Id. To satisfy the objective prong, she must show that she would be individually singled out for persecution. See Sukwanputra, 434 F.3d at 637.

The Board held that Isdiati did not meet her burden of proof to show that it is more likely than not that she would be subject to persecution in Indonesia. To overturn the Board's decision, Isdiati must show us that her evidence was "so compelling that no reasonable factfinder could fail to find" in her favor. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992). The Board determined that Isdiati did not demonstrate a clear probability of persecution on the basis of an individualized fear of harm, because she was never injured or harmed by the bomb threats, and her sister continues to practice Catholicism in Indonesia without being harmed. The record does not compel a contrary conclusion.

If an applicant cannot show that she would be singled out for persecution, she may still satisfy the objective prong and thereby qualify for withholding of removal if she "establishes that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. §

6

1208.16(b)(2)(i). In Lie, 396 F.3d 530, we held that, "to constitute a pattern or practice, the persecution of the group must be "systemic, pervasive, or organized." Id. at 537 (internal quotation marks removed). Isdiati argues that her evidence in the proceedings before the agency of frequent, violent assaults on Christian churches in Indonesia by Islamic extremists establishes a pattern or practice of persecution of Christians in Indonesia that the police have been unable to control. She argues that the 2009 Country Report confirms her testimony that interference with religion in Indonesia occurs with the complicity of local officials, see Tampubolon v. Holder, 610 F.3d 1056, 1062 (9th Cir. 2010) (because record compels conclusion that Christians in Indonesia are disfavored group, we must remand for Board to determine whether combination of disfavored group evidence and evidence of individualized risk is sufficient to establish that petitioners will be persecuted if removed to Indonesia).

Here, the parties do not dispute that the agency determined that Isdiati did not establish a well-founded fear of persecution without specifically addressing whether a pattern or practice of persecution existed in Indonesia. After a careful review of the record, however, we agree with the Attorney General that Isdiati failed to raise a pattern or practice argument before the agency. An alien must exhaust all administrative remedies available to her before the Board as a prerequisite to raising a claim before this Court. See 8 U.S.C. § 1252(d)(1); Yan Lan Wu v. Ashcroft, 393 F.3d 418, 422 (3d Cir. 2005). An applicant must first raise the issue before the agency. Alleyne v. Immigration & Naturalization Serv., 879 F.2d 1177, 1182 (3d Cir. 1989). Failure to present an issue

7

to the agency constitutes a failure to exhaust, thus depriving us of jurisdiction to consider it. See Lin v. Att'y Gen. of U.S., 543 F.3d 114, 119-20 (3d Cir. 2008).

As noted by the Attorney General, Isdiati's only mention of the phrase "pattern or practice" was in the Summary of Argument section in her brief before the Board. "Pattern or practice" was not even mentioned before the IJ, in her Notice of Appeal to the Board, or in the Argument section of her brief before the Board, let alone argued. There was no reference to specific evidence; and no discussion of pertinent legal authority, for instance, our decision in Lie, 396 F.3d 530, or precedent from the Ninth Circuit, see, e.g., Tampubolon, 610 F.3d 1056, where the pattern or practice argument has gained some traction. In the margin of her brief on appeal to this Court, Isdiati states that, although she did not explicitly argue to the Board that the bomb threats were made by forces the government was unable or unwilling to control, and even though the IJ made no pattern or practice determination, see Petitioner's Brief, at 15 n.1, the Board was still somehow supposed to be on notice of the claim. We disagree. We have held that exhaustion of administrative remedies is satisfied so long as the alien makes some effort to place the Board on notice of a straightforward issue, see Joseph v. Att'y Gen. of U.S., 465 F.3d 123, 126 (3d Cir. 2006), and we have commented that our "exhaustion policy" is "liberal," id. But here the Board understandably did not address a pattern or practice argument because there was nothing to alert the Board to its existence.

As in Lin, 543 F.3d at 122, we reject Isdiati's argument that she raised this issue before the agency. Her recitation of the magic words "pattern or practice" in her Summary of Argument, with no reference whatever to evidence in support of the claim or

any of the many cases which address and discuss "pattern or practice," was not enough to put the Board on notice of the issue. Moreover, unlike in <u>Lin</u>, where we went on to hold that the exhaustion requirement was nonetheless satisfied because the Board issued a decision considering the merits of the issue *sua sponte*, <u>see</u> <u>id.</u> at 124, we cannot hold here that the pattern or practice issue is exhausted because the agency in Isdiati's case did not address a pattern or practice argument *sua sponte* and issue a full explanatory discussion of the issue. Accordingly, we lack jurisdiction to consider Isdiati's pattern or practice argument, 8 U.S.C. § 1252(d)(1).

Last, the record does not compel a conclusion that it is more likely than not that Isdiati would be tortured by or with the consent of the Indonesian government, <u>see</u> <u>generally</u> 8 C.F.R. § 1208.18(a)(1).

For the foregoing reasons, we will deny the petition for review.